## HUDSON COUNTY CIRCUIT COURT.

### VREELAND v. BRUEN.

*In Debt by Attachment. Demurrer to Replication.*

Argued before HORNBLOWER, C. J. by Mr. *Chase* (of N. York), for defendant in support of demurrer,

And by *J. D. Miller*, and *I. H. Williamson*, for plaintiff.

HORNBLOWER, C. J. (after stating case, and expressing an opinion upon the technical form of the pleadings, which are omitted as unnecessary to be here repeated.) The bond declared upon in this case was executed on 2d May, 1836, and of course long before the bankrupt law was passed. By a writ of attachment returnable to September Term, 1842, the property, real and personal, of the defendant was attached, and thereby as alleged by the plaintiff, became bound for the payment of debts

due by him to the plaintiff in the suit and to such other creditors as should apply to be admitted to the benefit thereof. On 29th November, 1842, the defendant petitioned for the benefit of the bankrupt law, and was afterwards decreed a bankrupt; and on the 18th April, 1843, he obtained a certificate of discharge.

The question presented is, whether the lien acquired by the plaintiff upon the property of the defendant by virtue of the writ of attachment is within the proviso of the second section of the bankrupt act. The language of that clause is as follows: " Nothing in this act contained shall be construed to annul, destroy, or impair any lawful rights of married women or minors, or *any liens*, mortgages, or *other securities*, on property, real or personal, *which may be valid by the law of the States, respectively*, and which are not inconsistent with the provisions of the second and fifth sections of this act."

By the very terms of this statute, " *any liens* " upon property real or personal, *valid by the law of this State*, and not inconsistent with the provisions of the second and fifth sections of the act, are left in full force and unimpaired. The member of the bar who has favored the profession with a brief commentary on the bankrupt law (*Phil.* 1841) remarks upon this clause, that the practitioner may safely rely upon the peculiarities of local jurisprudence, on the enumerated subjects, unless he find the contrary established by one or other of these sections. He adds : " Provision on the points referred to, found in, or deduced from, *other* sections of this act would not overrule the state law in such particulars. In the event of incompatibility, the bankrupt law itself must give way."

The soundness of these remarks, I presume, will not be questioned, and it is only necessary to refer to the second and fifth sections of the bankrupt act to be satisfied that there is nothing in them inconsistent with the benefit claimed by the plaintiff in this cause. The provisions of the second section only invalidate unlawful preferences; and the fifth section takes away the legal remedy from such creditors as come in and prove their debts. It only remains then to inquire whether the plaintiff, at the time the defendant was decreed a bankrupt, had a lien on

his property, and such lien as was intended to be preserved by the act of Congress.

That the writ of attachment, under the laws of this state, creates to a certain extent a qualified lien, was not denied ; but the counsel of defendant with great learning and ability contended that this was not a lien within the meaning of the act of Congress. He distinguished between such liens as are perfect and complete, and such as are inchoate and contingent, and only in the nature of bail or security for a debt or a right demanded. Liens are certainly various in their origin, and in their object and effect. Some are equitable and some are legal. The former may arise out of the contracts or conduct of parties, when such contracts or conduct come to be subjected to the action or control of a court of equity : or they may be said to be constructive liens, resulting from the application of the rules and principles of equity to the dealings and transactions of men under the circumstances of each particular case. Legal liens are either by common law or by statute, or by the express contract of parties. Some of them may be called imperfect or inchoate liens, subject to be defeated by interposing events : conditional or contingent liens, as for an uncertain sum, or dependent upon an uncertain event; or for a debt that may or may not arise *in futuro ;* or in the nature of some collateral security ; or they may be complete and perfect, or more properly speaking, absolute liens, binding certain property, at all events, for the payment of a certain ascertained debt. Of the latter description are mortgages and judgments, the lien of a tailor upon the clothes he has made up, or of an innkeeper upon the horse of his guest, &c. But I do not see that the law of liens, or any classification of them, can aid us in arriving at the true meaning of the act of Congress. Its language is very general, broad and unqualified : " It shall not annul, destroy, or impair *any liens,* or *other securities* on property."

The question then is, has the plaintiff *any* lien, *any* security, on the defendant's property ? Not whether he has a lien or security for a specific debt, or for a sum certain, but a lien or security for such sum as the defendant may owe him ; and such as by the laws of this State will bind the property, until by due

course of law it shall be ascertained that nothing is due to him; or if anything be due to him until it be paid. To settle this question, we must recur to the laws of this state, to which we are referred by the act of Congress. If it is a lien "valid by the laws of the state," it is to remain in force unimpaired by the act of Congress.

The 4th and 5th sections of the attachment act, *El. Dig.* 20, 21, point out the mode in which a writ of attachment shall be executed. The 6th section declares, that the *writ* shall *bind* the property of the defendant so as aforesaid attached from the time of executing the same. By the plain terms of this section, and by the force of other provisions in the statute, the property attached was tied up, and held in custody of the law as a pledge or security for the plaintiff, and such other creditors of the defendant as should invoke the benefit of the writ by a ligament which the defendant could not dissolve, but by paying the debts of the several creditors, or by putting in special bail to their several actions. (See sections 16 and 17 *El. Dig.* 22.) Indeed, so absolutely did the Legislature intend to make the lien of the creditors upon the property of the debtor, that by the 29th section it is enacted, that even the death of the defendant should not abate the action or defeat the lien; but on the contrary, even in such case, the suit is to proceed to judgment, and a sale and distribution is to take place in the same manner as if such death had not intervened.

By the original act, however, as already stated, the defendant, by putting in special bail to the action of the plaintiff and of the applying creditors, might dissolve the attachment, and put an end to their lien upon the property. In such case, the suit was afterwards to proceed as at the common law, and judgment be enforced by the ordinary process of execution against the body or the property of the defendant.

In process of time, this remedy was proved to be inadequate for the security of creditors; and the Legislature in order to render the attachment more effectual, by a supplement passed 3d May, 1820, *El. Dig.* 26, required the defendant, in addition to the putting in special bail to the action, to enter into bond with one or more sufficient securities, to be approved by the

court, in double the amount of personal property attached, conditioned for a return of the goods in case judgment should be rendered for the plaintiff. By a recent statute, bail in such cases has been entirely dispensed with ; but by the 3d section of the act of 1820, it is in terms enacted, " that it shall not be lawful for a defendant in attachment, after the same has been *issued,* to give, grant, bargain, sell, alien, or in any wise to convey, any lands, &c. or any interest therein, of which he was seised, possessed, or entitled, at the time of the issuing of such writ : *which said writ* of attachment shall immediately on the issuing thereof, *become and remain a lien in the said lands,* &c., *until the plaintiff,* and such of the creditors as shall apply under the attachment, *shall be satisfied his or her debts ;* or until judgment shall be rendered against such plaintiff," &c. And the act then proceeds to declare, that all conveyances made by the defendant pending such writ shall be void as against the plaintiff in attachment, and all creditors who shall have become parties thereto.

Here we have, then, an absolute *lien* in express and positive terms, binding the lands of the defendant for the payment of his debts to the plaintiff, or to the applying creditors, a lien which was in full force when the defendant, upon his own application, was declared a bankrupt; and one which, by force of the statute of this state, he never could have dissolved but by paying the debt, or by appearing to the action of the plaintiff, and of others claiming to be creditors, and obtaining the judgment of the court in his favor.

But it is said that this is not a lien within the act of Congress, because it is not a perfect lien ; that it is only in the nature of a proceeding to bring the party into court, or to compel his appearance to the action of the plaintiff, and of the persons applying as creditors. This was no doubt one feature of the original act. It was to subject him to the consequences of an *ex parte* proceeding and adjudication, if he did not appear in the manner prescribed by law, and make his defence. But it bound the property absolutely until such appearance was effected. Had such still been the nature and object of our attachment act, I will not say, but the discharge of the bankrupt would have

superseded the lien; for although by appearing to the action he could have dissolved the lien, yet he would have placed himself in court in the same manner as if he had been brought there by common law process; and he might then have pleaded his discharge in bar of the action. In such case, the result would have been, that by appearing to the action he would terminate the lien; and by pleading his bankruptcy he would entirely defeat the action and discharge his person. But the supplement cited has very much changed the character and object of our attachment law. It has become more than a mode of commencing a suit, and of compelling the appearance of the defendant. It has become a proceeding *in rem*, seizing the estate, and giving the plaintiff and creditors in attachment a vested interest in the property attached in the nature of, or at least as strong and absolute as a mortgage, to secure to them the debts due at the time of issuing the attachment. The statute gives the defendant an opportunity of contesting the fact, or the amount of his indebtedness; but it will not discharge the lien on his property until he shews that the debts have been liquidated, or that they have never existed.

But it was strongly pressed that this was not a lien within the meaning of the act of Congress, because it was not a conventional lien; nor for a specific or admitted debt. But neither the language nor the spirit of the saving clause in the act of Congress confine its operation to conventional liens, or to liens for a specific or admitted debt. The language of the clause is, " *any* lien, mortgage, or other security, valid by the laws of the state." It makes no distinction between common law or statute liens: nor between liens for specific or admitted debts, and those which are only contingent and uncertain. The lien of a mechanic, or of a common carrier, is not always for a specific sum, or for an admitted debt; and yet such lien is not destroyed or discharged by bankruptcy. So a mortgage, to secure indemnity for possible and contingent damages; or for the payment of such sums as may afterwards grow due to the mortgagee, or may be found due upon a settlement of accounts, are valid liens, undisturbed, as I apprehend, by the bankrupt law. Why, then, should not a lien created by statute to secure persons claiming,

Vreeland v. Bruen.

in the mode pointed out by the statute to be creditors of another, such moneys as he may be found to owe them, be equally undisturbed by the bankrupt law? I can see no reason why such lien may not be equally recognized and protected by the saving clause in question. Suppose the Legislature of this state should enact that the real estate of any one who should accept any office, or become executor or trustee of any estate, should be bound as by mortgage for the faithful execution of the office or trust; would not such lien remain unaffected by the bankrupt law? Let it be admitted, for the sake of argument, that Congress, under the authority to pass " uniform laws on the subject of bankruptcies throughout the United States," might have avoided all contracts, and swept away all such liens and other securities, yet they have not done so, but by the language of the statute have left it to judicial construction to determine which liens and securities are saved from its operation. Having respect to the object and spirit of legislation, we must resort to those maxims of the common law, and those rules of construction which govern us in other cases, and remember that vested rights are not to be destroyed, when they can be saved without disregarding or doing violence to a statute: and that the law favors the diligent, and not those who sleep over their rights. The plaintiff in attachment availed himself of a subsisting legal remedy at the hazard of a bill of costs. By its means, he and those creditors who came in under the attachment, secured to themselves in exclusion of all other creditors, a statute lien on the defendant's property, and a right to be first paid out of its proceeds. The defendant afterwards, and it may be for the very purpose of defeating these active creditors, declares himself a bankrupt, and succeeds in getting himself to be decreed one and discharged as such. He, not his other creditors, then comes into this court and seeks to set aside these proceedings; not to protect his person or his subsequently acquired property; but practically to secure his dormant creditors a *pro rata* distribution of his assets. Unless constrained by the stern and controlling language of Congress, constitutionally expressed what judge acting under the influence of the eternal principle of right and wrong can be led away by arguments founded on nice and

refined distinctions between perfect and imperfect, or inchoate liens ?

In my opinion, therefore, the demurrer must be overruled and the plaintiff have such judgment as he has prayed for in the conclusion of his replication.

I have not reached this conclusion without the most careful examination of the opinion of Mr. Justice Story, in the case of *ex parte Foster*, (5 *Boston L. R. for May* 1842, *p.* 55); and it is unpleasant even to appear to differ from so able, upright, and distinguished a jurist, having an appropriate, and in some measure an exclusive jurisdiction under the bankrupt law. But if it is the exclusive province of the Federal courts to settle the construction of the acts of Congress, it is equally the province of the State courts to settle the construction of State Legislation, and their decisions must prevail, until by the decision of the Supreme Court of the United States they shall be found to be in conflict with the constitutional enactments of the general government, and be reversed upon that ground. As yet, I am not aware of any adjudication by that tribunal upon the question now before us, and I must therefore be guided by the light of my own understanding, and decide according to the dictates of my own conscience.

Justice Story with great pains and research gives the doctrine of lien, and comes to the conclusion, that the lien created by an attachment, is at most no more than a contingent and conditional security, to satisfy the judgment of the creditor, if he ever obtained one. He then proceeds to consider the real question, viz: whether such a " lien or security " is within the saving clause of the bankrupt act. After reciting that clause, he says : " The natural interpretation of these words, ' liens, mortgages, or other securities on property, real or personal,' would seem to be that they referred to things of like nature, or as the maxim of the law is, each may be known by its associates, (*noscitur a sociis*)." I cannot see the force of this remark. No doubt but that the words *liens* and *mortgages* as here used mean *securities*, for they are followed by the words " or *other* securities :" the words " on property," &c. being evidently added to

restrict the saving to such securities as in their terms bind some property real or personal. But what kind of liens are saved? Must they be conventional liens? It is admitted that judgments and executions which are by operation of law unsatisfied, are liens saved by the proviso. It cannot be confined to common law liens, for judgments are only liens by force of statute law. Nor can I conceive any ground of law, reason, or justice, why the saving clause should be restricted to liens for a specific or admitted debt, or sum of money. If a statute lien (or a judgment) for a certain sum is within the saving, why may not a statute lien, for such sum as may be found due upon a settlement, or upon a trial at law, be equally considered within it? Again, the certainty or the uncertainty of the fact of indebtedness, or the amount of it, if any, cannot be the criterion; for a mortgage given in good faith to secure the faithful performance of a contract, and to respond in damages in case of failure; or in view of prospective dealings between the parties, where no indebtedness exists at the time; or to secure such balance, if any, as may be found due on an amicable settlement; or by the decision of arbitrators, or the verdict of a jury; or to indemnify against future and prospective endorsements to be made by the mortgagee, are all liens within the admitted meaning of the saving clause; and although a mortgage may be said to pass the title, yet at this day, it is but a mere security, and is considered a title only so far as may become necessary to preserve and protect the rights of the mortgagee.

Judge Story proceeds to say, " the words may all be satisfied by treating them as referring to liens fixed and vested in the party by consummate title; such as liens by contract, vesting on possession, or absolute by law, such as pledges, and not inchoate and conditional liens, dependent upon mere remedial process." But why should we seek to restrict the excepted securities to the very narrowest construction that will satisfy the language of the saving clause? Why not rather extend the exemption claimed to every lien and security that can fairly and legitimately be brought within its meaning? The attachment law of this state, equally with the bankrupt law, seeks a just and equal distribution of the assets of the debtor.

CITED in Smith v. Warden, 6 Vr. 348.